## HARPER v. STATE.

## Opinion delivered January 16, 1922.

1. INDICTMENT AND INFORMATION—ELECTION BETWEEN COUNTS.—In a prosecution for murder under an indictment charging in one count that defendant killed decedent and in another that defendant was an accessory before the fact, it was not error to refuse to require the State to elect on which count the case would be submitted.

2. CONTINUANCE—ABSENT WITNESS.—In a prosecution for murder, it was not an abuse of discretion to refuse to grant a continuance on account of the absence of a witness who would testify that she was with defendant at the home of a third person, several miles away, for several hours, before and after the killing, where no showing was made of any effort to procure her attendance or deposition, or that her attendance could be obtained at a later date, nor any showing why proof of such alibi could not be made by some member of the family which defendant was visiting.

3. HOMICIDE—EVIDENCE OF GENERAL REPUTATION—INVITED ERROR.—In a prosecution for murder, where defendant's counsel asked witnesses, on cross-examination, what defendant's reputation as a law-abiding peaceable man was, to which they replied that they

had never heard anything against him, defendant cannot complain of the admission of their subsequent testimony that they had heard that he had been accused of stealing hogs, as the error was invited.

4. CRIMINAL LAW—CORROBORATION OF ACCOMPLICE.—Evidence in a murder case *held* to corroborate the testimony of an accomplice.

Appeal from Jackson Circuit Court; *Dene H. Coleman,* Judge; affirmed.

*Fred M. Pickens* and *Smith & Gibson,* for appellant.

The court erred in refusing a continuance. 109 Ark. 407; 120 Ark. 173. The refusal to grant a continuance is subject to review on appeal. 99 Ark. 334.

The demurrer should have been sustained. There was a misjoinder of offenses. C. & M. Digest, § 3015; 109 Ark. 389; 109 Ark. 498; 37 Ark. 274; 41 Ark. 173.

The court erred in permitting the witness Ivey to testify as to the reputation of the defendant.

The testimony of Paul Curtis was not sufficiently corroborated. C. & M. Digest, § 3181; 120 Ark. 148.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

There was no abuse of discretion in overruling the motion for continuance. 71 Ark. 62; 103 Ark. 509; 125 Ark. 269; 136 Ark. 84.

The demurrer was properly overruled. 59 Ark. 423. It is permissible to charge one as principal and as accessory before the fact in the same indictment. 42 Ark. 105; 1 Met. (Ky.) 13; 2 Bishop Cr. Pr. sec. 7.

The testimony of J. M. Ivey as to the general reputation of defendant was properly admitted. 83 Ark. 119.

The testimony of Paul Curtis was sufficiently corroborated by that of the wife of the deceased and by Arch Quarles, Jane Block, Ann Block, and S. R. Allen. 133 Ark. 599.

SMITH, J. Appellant was convicted of murder in the first degree and sentenced to imprisonment for life, and has appealed.

The indictment on which he was tried contained two counts, in the first of which he was charged with having killed one Jesse Ford by shooting the said Ford with a gun, and in the second count he was charged as an accessory before the fact to the killing of Ford by one Paul Curtis.

The court refused to require the State to elect on which of the two counts the case would be submitted to the jury, and this action is assigned as error. The case of *Gill* v. *State*, 59 Ark. 423, decides this point adversely to appellant's contention.

Error is assigned in the refusal of the court to grant a continuance until the following term of the court on account of the absence of one Mattie Cole. The motion for a continuance alleged that Mattie Cole was then in the State of Kansas, but that her attendance could be procured at the next term of court, and that if she were present she would testify that she and appellant were at the home of Claud Hager, some four or five miles from the scene of the killing, and that she and appellant were at Hager's house for several hours before and after the killing. The showing is made that only seven days elapsed between the return of the indictment and the trial. No showing was made of any effort to procure the attendance of the witness, and there was no request to take her deposition. She was without the jurisdiction of the court and not subject to its process, and there was no showing, except the opinion of appellant, as expressed in the motion for continuance, that her presence in court at a later date could be obtained. There was no showing that Mattie Cole was a member of the family of Claud Hager, or that she resided in that home, and there was no showing why this proof could not be made by Claud Hager and the members of his family. As a matter of fact, appellant offered no testimony in his own behalf except testimony tending to show his good reputation. We think no abuse of discretion was committed in overruling the motion for a continuance.

Error is assigned in the admission of certain testimony touching appellant's reputation. Appellant put his general reputation in issue when his counsel asked J. M. Ivey (who was the sheriff of Jackson County, where the killing occurred, at the time of its occurrence), on his cross-examination, what appellant's general reputation as a law-abiding, peaceable man was. The witness answered, "I never heard anything against him." The court then permitted the witness to testify, over appellant's objection, that since the killing of Ford he had heard that appellant had had trouble with his neighbors on account of charges of stealing hogs.

John Fleetwood was called as a witness for appellant, and testified that appellant's reputation was good as far as he had heard, and he then testified, over appellant's objection, that since the trial he had heard that appellant had been accused of hog stealing.

No error was committed in admitting this testimony. Appellant put his reputation as a law-abiding citizen, as well as that for peace and quietude, in issue; and if the evidence was broader than it should have been, the error was invited. It is true Ivey and Fleetwood had not heard anything derogatory to appellant's reputation until after the killing of Ford, but they did thereafter hear such comment, and this comment related to appellant's general reputation prior to the killing of Ford.

It is finally insisted that the judgment should be reversed because the conviction rested upon the testimony of Paul Curtis, shown to be an accomplice, without corroboration. Ford was assassinated on Saturday night, September 4, 1920, while sitting at his table eating supper, between seven and eight o'clock. It was a dark, cloudy night. The assassin stood in the dark and fired through a screen door, and powder burns were found on the screen.

According to the testimony of Curtis, he was appellant's confidant, and was told by him about twelve

o'clock the day of the killing that he intended to kill Ford that night. He told Curtis that he had already poisoned Ford's house-dog, and he explained to Curtis the details of his plan to kill Ford while Ford was eating supper. Curtis left home at once for Newport, and was in that city on the night of the killing. On his return the following day appellant said to him, "The man I spoke to you about is dead." That appellant had a pistol of either .38 or .41 caliber, with which he said he had killed Ford, and that he wore his old gum boots at the time of the killing. Curtis admitted that he himself had an old pair of gum boots; but it was not claimed that he did the killing or was present when it was done.

It was shown that Ford and appellant had had several angry quarrels growing out of a charge made by Ford that appellant was stealing hogs. Appellant had threatened to kill Ford, and they had ceased speaking to each other. Mrs. Ford, the widow of deceased, testified that her watch-dog was poisoned a few days before her husband was killed. A number of witnesses saw appellant and his wife driving in a northerly direction beyond Ford's home, and about "good dark" appellant was seen driving south in the direction of Ford's home.

Ivey, who was the sheriff at the time of the killing, testified that he went to the scene of the killing the next day after it occurred, and that he saw the tracks of the assassin, which he followed for a considerable distance, and that the man who made the tracks had on large gum boots or overshoes considerably worn. That he picked the bullet fired by the assassin out of the door facing, and weighed and compared it, and that its caliber was either .38 or .41.

We think the testimony set out furnished corroboration of the testimony of Curtis legally sufficient to sustain the conviction.

No error appearing, the judgment is affirmed.